PORT OF PORTLAND, *Petitioner,*
*v.*
MUNICIPAL EMPLOYEES, LOCAL 483,
*Respondent.*
(No. C-501, CA 5661)
556 P2d 692

*Lester V. Smith, Jr.,* Portland, argued the cause and filed the brief for petitioner.

*Jerome B. Buckley, Jr.,* Portland, argued the cause for respondent. With him on the brief were Herbert B. Galton, and Galton & Popick, Portland.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

SCHWAB, C. J.

**SCHWAB, C. J.**

This case involves the procedures whereby previously unrepresented public employes may be added to an existing bargaining unit for the purpose of representation in collective bargaining.

Municipal Employees, Local 483, represents some of the employes of the Port of Portland.[1] After various hearings, Local 483 obtained from the Employment Relations Board an order expanding the bargaining unit it represented "to include the position of Storekeeper." The Port appeals from that order.

Local 483 argues that the Board's order is not appealable, citing *Klamath Co. v. Laborers Inter. Union,* 21 Or App 281, 534 P2d 1169 (1975). There we examined the statutory scheme for designating bargaining units and certifying bargaining representatives and concluded that, until all steps in the statutory scheme had been completed, an appeal from a Board order would not lie. Ordinarily, the final, and thus appealable, step in the statutory scheme is an unfair-labor-practice complaint.

More specifically, in *Klamath County* the Board had only designated a bargaining unit; there remained the necessity for an election to select a bargaining representative and, unless a majority voted for no representation, the onset of the duty to bargain in good faith. Finding substantially the same situation now before us, we agree that *Klamath County* requires dismissal.

I

The effect of the proposed order of the Board's hearing officer would have been: (1) to redefine the appropriate unit—like the initial definition of an

[1] The record is unclear as to which of the Port's employes are represented by Local 483. Apparently Local 483 represents dockhands, utility men, riggers, guards and janitors. Local 483 and several other unions, in apparently a voluntary association, make up the Portland District Council of Trade Unions. The actual collective bargaining relationship exists between the Port of Portland and the District Council.

appropriate bargaining unit in *Klamath County;* and (2) to require a secret-ballot election be held to determine whether the Storekeeper wished to be represented by Local 483—also similar to the situation in *Klamath County.*

The effect of the Board's actual order was to expand the bargaining unit without any election. The Board concluded that "no question of representation exists." This conclusion was based, as best we can tell from the record, on the fact that the incumbent Storekeeper had signed some kind of document apparently requesting representation by Local 483.[2] In any event, the Board's order amounts to a ruling that in at least some situations a bargaining unit can be expanded without an election to determine if the employes in previously unrepresented job classifications desire representation.

The parties' arguments on this proposition invoke an alleged distinction between a petition to the Board for certification of a collective bargaining representative and a petition to the Board for bargaining unit clarification.[3] The former requires a secret-ballot election; the latter, so the argument goes, does not.

This argument may have some basis in federal labor law. The National Labor Relations Board has, in passing on petitions for unit clarification, at times ordered expansion of a bargaining unit without a representation election, but in other situations concluded that there must be an election.[4] These decisions

---

[2]The document in question is not in the record. All that appears is the following statement by Local 483 in its initial petition to the Board:

"This person [the Storekeeper] has signed a bargaining card with our Union requesting union representation and requesting that she be included in the bargaining unit."

[3]Local 483 filed both kinds of petitions with the Board in this case.

[4]*See* Union Electric Company, 217 NLRB 124 (1975); Gould-National Batteries, Inc., 157 NLRB 679 (1966); Remington Rand Division of Sperry Rand Corp., 132 NLRB 1093 (1961); Armour and Company, 119 NLRB 623 (1957); Kaiser Company, Inc., 59 NLRB 547 (1944); Globe Machine and Stamping Co., 3 NLRB 294 (1937).

are not easy to reconcile. One apparent distinction drawn has been between newly created job classifications, i.e., not in existence when the bargaining unit was originally certified, and long-standing job classifications. Newly created job classifications can, seemingly, be added to a bargaining unit without an election; long-standing job classifications cannot be added to a bargaining unit without an election.

We need not here pass on the existence of such a distinction under Oregon law. We only note that the present case involves the addition of a long-standing job classification to the existing bargaining unit, a situation that even under National Labor Relations Board precedents seems to require a representation election.

In any event, we conclude that the present situation requires a representation election under Oregon law. Oregon statutes repeatedly refer to a "majority" of the employes in a bargaining unit choosing a bargaining representative. ORS 243.666(3), 243.682(2)(b), 243.682(2)(d), 243.686(4), 243.686(5), 243.686(6)(b), 243.686(6)(c). The majority sentiment must be determined by an election, ORS 243.686, under procedures established by the Employment Relations Board, ORS 243.766(2).

The procedures adopted by the Board include the following:
"* * * Appropriate notices of election shall be furnished by the executive secretary to the public employer for suitable posting. Such notices shall set forth the details and procedures for an election, the appropriate unit * * * the date(s), hour(s) and place(s) of the election and shall contain a sample ballot." OAR 115-13-065.
"* * * The public employer shall submit a list of eligible voters, their names, addresses and job classifications to each labor organization to be on the ballot and to the board at least 20 days before the date of the election." OAR 115-13-070(2).
"Voting shall be by secret ballot and shall present an

opportunity to vote for any one of the candidates on the ballot or for no representation." OAR 115-13-070(4).

"Any party may be represented at the polling place(s) by observers of its own selection, subject to such limitations as the executive secretary may prescribe." OAR 115-13-070(7).

"Within five (5) days after the tally of ballots has been furnished, any party may file with the executive secretary an original and one (1) copy of objections to the conduct of the election or conduct affecting the results of the election * * *." OAR 115-13-070(10).

The pattern that emerges from the statutes and regulations is one of majority self-determination protected by a full "campaign" with all "contestants" having equal access to the "electorate," OAR 115-13-070(2), to attempt legitimate persuasion, *see* OAR 115-13-070(10), which culminates in a secret-ballot vote, OAR 115-13-070(4). This pattern is the norm when previously unrepresented employes choose whether to have a representative to bargain on their behalf. We can perceive no basis for this scheme's not being applicable when, as in this case, a previously unrepresented employe in a long-standing job classification is added to a bargaining unit with an existing representative. We therefore conclude that regardless of the label used—a petition for unit clarification or anything else—a previously unrepresented employe in a long-standing job classification cannot be added to an existing bargaining unit without the opportunity to vote.

It is possible that the Board reasoned in this case that a vote would be superfluous because the incumbent Storekeeper had indicated some form of preference for representation by Local 483. *See* note 2, *supra.* This reasoning converts what should be a decision based on the contents of a ballot box into a decision based on the contents of a hearing record. This may make some sense on these facts where only one employe is involved. But abstractly the Board's possible reasoning subverts the "campaign" process

described above and permits an employe to make the important representation decision without necessarily having the benefit of possible input from management or rival labor organizations. Even where a bargaining unit is being "clarified" to add only one employe, we conclude meaningful freedom of choice can only be protected through an election process. A person's publicly stated position does not always coincide with that person's ballot cast in the privacy of a voting booth. *Cf. Linden Lumber Division v. NLRB,* 419 US 301, 95 S Ct 429, 42 L Ed 2d 465 (1974).

## II

■ When the Employment Relations Board initially certifies a bargaining unit, and the majority of the employes in the unit votes in favor of a given representative, a duty to bargain in good faith then applies to the employer and the employe's representative. The employer can refuse to negotiate, invite an unfair-labor-practice charge and, in the proceeding that charge will lead to, defend on the basis that the initially certified bargaining unit is inappropriate. *Klamath Co. v. Laborers Inter. Union, supra.*

Following proper expansion of a bargaining unit to add previously unrepresented employes, the question may arise whether the existing collective bargaining agreement applies to the new members of the bargaining unit, or whether it is necessary to bargain over the terms and conditions of the new members' employment. About the only point on which the Port of Portland, Local 483 and the Employment Relations Board agree in this case is that the existing agreement between the Port and Local 483 cannot be applied to the Storekeeper and that it is necessary to negotiate about this position.

■ This is in accord with federal labor law. *Federal-Mogul Corporation, Bower Roller Bearing Division,* 209 NLRB 343 (1974). The employer cannot unilaterally extend the terms of an existing contract to job classifications added to the bargaining unit during the

term of the contract. Instead, the terms and conditions of the new bargaining unit members' employment must be negotiated. And until negotiations are concluded, the terms and conditions enjoyed by the employes in question when they were unrepresented apply.

## III

In summary, to resolve the procedural question of the appealability of the order now before us, it has been necessary to consider the substantive issues of: (1) whether a vote is required to add previously unrepresented employes to a bargaining unit; and (2) whether, following such an addition, negotiations are required rather than automatic application of the preexisting contract. Our affirmative holdings on those issues lead to the conclusion that this appeal is premature.

Appeal dismissed.